IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT JAMES CLAUS and Case No. 3:16-cv-01509-JR
SUSAN LYNNE CLAUS,

    Plaintiffs, OPINION AND ORDER

    v.

COLUMBIA STATE BANK,

    Defendant.

Russo, Magistrate Judge:

Plaintiffs Robert and Susan Claus bring this action against defendant Columbia State Bank ("Columbia"). Columbia now moves to dismiss two of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). In addition, Columbia requests judicial notice of the documents memorializing the loan made from Columbia to the Clauses (collectively "the Construction Loan Agreement") and a red-lined version of the Second Amended Complaint ("SAC"). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). On February 25, 2020, the Court held oral argument. For the reasons stated below, Columbia's motion is granted in part and denied in part.

## BACKGROUND

Since the mid-1980s, the Clauses have engaged with Columbia and its predecessor organization in "a continuous and extensive banking relationship" as "private banking customers." SAC ¶ 4 (doc. 103). Due to concerns over costs related to their declining health, the Clauses undertook a development project as an investment that could pay for medical and other expenses. Id. at ¶ 7. In late 2011, the Clauses sought a loan from West Coast Bank ("West"), a predecessor to Columbia, to develop eight lots on one of their properties in Sherwood, Oregon ("McFall subdivision"). Id. West was aware of the Clauses' ongoing health issues and "told the Clauses that it would act as their agent in administering the financial aspects of the building process." Id. at ¶¶ 9-10. In April 2013, while the Clauses were still securing the loan from West, Columbia purchased West. Id. at ¶ 12. In October 2013, Columbia issued the loan, in the amount of $900,000, secured by a deed of trust on the McFall Subdivision. Cruse Decl. Ex. 3, at 1 (doc. 15).

Columbia reiterated it would continue to administer the building process and act as an agent for the Clauses by monitoring the construction project, approving contracts, and ensuring that the contractor, subcontractors, and suppliers were properly paid, but the terms of the Construction Loan Agreement do not reflect Columbia's promised involvement. SAC ¶¶ 14, 25 (doc. 103); Cruse Decl. Ex. 1 (doc. 15). Instead, the Construction Loan Agreement reveals that the Clauses were responsible for managing the project and submitting to Columbia contractors, plans, builder contracts, and requests for money disbursements. Cruse Decl. Ex. 1, at 3 (doc. 15). Moreover, the Construction Loan Agreement indicates it was fully integrated at the time of signing. Id. at 7.

When time came to engage a general contractor, Columbia "mandated" Signature Homebuilders, LLC ("SHB") fill the role because SHB was a "turnkey builder," though it was not the Clauses' preferred choice. SAC ¶ 16 (doc. 103). Columbia made various representations about

SHB's credit and capitalization, indicating there were no "red flags." Id. at ¶¶ 17, 20. Columbia also represented "SHB was a full-service builder, meaning that it was licensed and had the employees necessary to complete all the work on a home without having to hire subcontractors." Id. SHB, however, was not a full-service builder, but rather "hire[d] out all the physical work to subcontractors." Id. at ¶ 26. Furthermore, each of SHB's members was either "in or had recently emerged from Chapter 7 bankruptcy proceedings," and one SHB member had a criminal record and was not listed as a contractor licensee with the Oregon Construction Contractors Board. Id. at ¶ 19.

The Clauses would not have chosen to proceed with SHB had they known of its precarious financial position, but Columbia refused to disclose the documentation of its review of SHB on confidentiality grounds. Id. at ¶ 18. Thereafter, Columbia purportedly failed to diligently administer the project in a variety of ways, including making disbursements to SHB over assertions by the Clauses that SHB had committed a forgery to begin construction on Lot Four. Id. at ¶¶ 28-30. In June 2014, SHB left Lots Three, Four, and Five unfinished in the McFall subdivision. Id. at ¶ 31.

Through July and August 2014, various suppliers and subcontractors filed liens against the properties at the subdivision. Id. at ¶ 32. Columbia ultimately filed its own liens on Lots Four and Five but was still named as a defendant in the foreclosure proceedings brought by other subcontractors. Id. at ¶ 35. Amidst a variety of disputes and failed negotiations regarding the liens, the Clauses proceeded to use the remaining funds, combined with a private loan, to complete the unfinished homes on Lots Four and Five. Id. at ¶ 41.

In March 2015, the Clauses, Columbia, and various lienholders agreed to use the proceeds from the sale of Lot Four to pay off the remaining liens. Id. at ¶ 42. Construction on Lots Four and

Five was completed in April 2015. Id. That same month, Columbia acquired through assignment a lien filed by Macadam Floor & Design ("Macadam Lien") that was "invalid on its face." Id. at ¶¶ 32, 44. Columbia knew there was a pending sale on Lot Five and allegedly acquired this lien deliberately to "kill the sale and disrupt settlement negotiations between the Clauses and the other lien holders." Id. at ¶ 44. Columbia then drew funds from the line of credit it provided for the construction to "pay off" the lien, including the attorney fees the bank incurred in acquiring it. Id.

The Clauses were able to resolve the lien issues in June 2015, although on less favorable terms than those "within reach" prior to Columbia's acquisition of the Macadam Lien. Id. at ¶ 45. In June, July, and December 2015, the Clauses sold the homes on Lots Four, Five, and Three, respectively. Id. The remaining liens were paid off with the proceeds from those sales, despite being less than what the Clauses would have received if Columbia had not threatened to accelerate foreclosure proceedings at the time of the sales and pursued creditor remedies in an "adversarial" manner. Id. at ¶¶ 45-46.

The Clauses' counsel filed a complaint against Columbia in Washington County Circuit Court on June 22, 2016, alleging fraud, negligence, and breach of contract. Claus v. Columbia State Bank, 2018 WL 1832871, at *2 (D. Or. Apr. 17, 2018) ("Claus I"). On July 26, 2016, Columbia removed plaintiffs' case to this Court based on diversity jurisdiction.

On April 17, 2018, Judge Acosta granted Columbia's first motion to dismiss with leave to amend all claims. Id. at *16. The Clauses filed their First Amended Complaint ("FAC") pro se on September 17, 2018, which reasserted the breach of contract and fraud claims, in addition to alleging three new claims: negligent misrepresentation, contractual breach of the obligation of good faith and fair dealing, and promissory estoppel. FAC ¶¶ 46-55 (doc. 73). Columbia filed a second motion to dismiss, which the Court granted. Claus v. Columbia State Bank, 2019 WL

5624754, at *25 (D. Or. Oct. 30, 2019) ("Claus II"). Leave to amend was provided but solely in regard to plaintiffs' claims for negligent misrepresentation, fraud, and contractual breach of the obligation of good faith and fair dealing; all other claims were dismissed with prejudice. Id. Specifically, the Court found plaintiffs' claim for contractual breach of the obligation of good faith and fair dealing deficient because plaintiffs failed to provide facts supporting the inference that Columbia either used an improper method of foreclosure or caused the Clauses to default intentionally and in bad faith. Id. Additionally, plaintiffs' fraud claim was not viable because plaintiffs failed to provide facts supporting the inference that Columbia intentionally and knowingly misrepresented SHB's qualifications, and that the Clauses' justifiably relied on Columbia's representations. Id. Plaintiffs filed their SAC on December 16, 2019.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and the allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**DISCUSSION**

I. **Preliminary Matter**

Columbia moves for judicial notice of the Construction Loan Agreement, arguing it is incorporated into the SAC by reference. Def.'s Mot. Dismiss 2 (doc. 106). Normally, a court may not consider any materials beyond the pleadings when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). A court can consider a document not included in the pleadings "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Though only expressly referenced a few times in the SAC, the Construction Loan Agreement is the bedrock of the transaction from which this case arises. See, e.g., SAC ¶¶ 22-23, 38 (doc. 103). Accordingly, the Construction Loan Agreement forms the basis of the SAC, such that the Court takes judicial notice thereof. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) ("plaintiffs [cannot] surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"), superseded by statute on other grounds as recognized in Abrego v. Dow Chem. Co., 443 F.3d 676, 681-82 (9th Cir. 2006) (per curiam). Indeed, Judge Acosta took notice of the Construction Loan Agreement in regard to the FAC, which asserted similar claims. Claus I, 2018 WL 1832871 at *4.

The Court, however, does not take judicial notice of the redlined version of the SAC, as the Court is capable of comparing the successive complaints itself without relying on demonstrative aids prepared by the parties. Additionally, affidavits and declarations are not allowed as pleading exhibits unless they form the basis of the complaint. Ritchie, 342 F.3d at 908.

## II. Contractual Breach of the Obligation of Good Faith and Fair Dealing Claim[1]

Every contract includes an implied duty of good faith and fair dealing. Hampton Tree Farms, Inc. v. Jewett, 320 Or. 599, 615, 892 P.2d 683 (1995). Yet that duty does not alter the interpretation of the contract or insert new terms into the contract. W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc., 284 Or. App. 316, 324-25, 392 P.3d 770 (2017) (citation omitted). Similarly, the "duty [of good faith and fair dealing] cannot expand the parties' substantive duties under a contract; rather, it relates to the performance of the contract." Gibson v. Douglas Cty., 197 Or. App. 204, 217, 106 P.3d 151 (2005). The duty of good faith and fair dealing "emphasizes faithfulness to an agreed common purpose and is designed to effectuate the reasonable contractual expectations of the parties." Workshops Portland Carson, LLC v. Carson Oil Co., 2017 WL 1115164, at *4 (D. Or. Mar. 24, 2017) (citation and internal quotations omitted).

In the FAC, plaintiffs alleged that Columbia breached the contractual obligation of good faith and fair dealing by taking actions intended to impede their ability to resolve the liens resulting from SHB's conduct and pay off the line of credit. FAC ¶¶ 53-55 (doc. 73). In dismissing this claim, Judge Acosta instructed plaintiffs to provide additional facts showing Columbia either caused the default by acting intentionally and in bad faith, or used an improper method of foreclosure. Claus II, 2019 WL 5624754 at *24.

---

[1] Plaintiffs assert, for the first time in their opposition, that they are bringing two claims for breach of the obligation of good faith and fair dealing, the first in contract and the second in tort. Pl.'s Resp. to Mot. Dismiss 7 (doc. 111). This case has been pending for more than three years and the SAC is the third iteration of the complaint. Further, Judge Acosta granted plaintiffs leave to amend solely in regard to their contractual breach of the obligation of good faith and fair dealing claim. Claus II, 2019 WL 5624754 at *18-20. Accordingly, the Court considers only the contract claim at this stage in the proceedings. See LR 7-1 ("Motions may not be combined with any response, reply, or other pleading."); see also U.S. Bank Nat'l Ass'n as Tr. v. Edwards, 2018 WL 4621920, at *4 (D. Or. Aug. 28, 2018) (dismissing a claim that was "outside of the scope of [the] leave" to amend granted by the court) (citations omitted).

There are two newly pleaded facts in the SAC that bear on plaintiffs' contractual breach of the obligation of good faith and fair dealing claim. First, plaintiffs allege Columbia continued to disburse funds to SHB from the line of credit for the development of Lot Four despite their assertions that they had not signed a construction contract for that lot. SAC ¶ 28 (doc. 103). Second, plaintiffs allege Columbia acquired the Macadam Lien, which was facially defective, to purposefully "kill" a pending sale of Lot Five. Id. at ¶ 44. Specifically, plaintiffs allege that the Macadam Lien was facially defective because Macadam Floor & Design could not have performed the work it claimed to have performed given that the house was locked on the relevant dates. Id. at ¶ 32. Plaintiffs also allege the lien failed to meet the statutory requirement of producing a written contract for the work performed. Id. at ¶¶ 32, 44. Additionally, Columbia collected invoices, which should have been comprehensive, but that collection did not include an invoice from Macadam Floor & Design. Id. at ¶ 36.

It is reasonable to infer from these facts that Columbia knowingly made disbursements to advance its own interests by expediting construction, and thus recovering repayment for the loan more quickly, in violation of the Clauses' contractually reasonable expectations. Furthermore, it is reasonable to infer that Columbia caused the defaults at the McFall subdivision by disbursing funds in this manner. The allegations regarding the Macadam Lien can also reasonably support an inference that Columbia acted in violation of the parties' reasonable expectation that neither would knowingly use an invalid instrument of debt solely to preclude the other's mitigation of their losses during the foreclosure process. In fact, at oral argument, defendant did not contest that this claim was adequately plead in contract. Hearing (Feb. 25, 2020). Accordingly, the SAC states a contractual breach of the obligation of good faith and fair dealing claim such that defendant's motion is denied as to this issue.

### III. Fraud

To establish a claim for fraud under Oregon law, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false; (3) the defendant intended the plaintiff to rely on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff was damaged as a result of that reliance. Horton v. Nelson, 252 Or. App. 611, 616, 288 P.3d 967 (2012) (citing Strawn v. Farmers Ins. Co., 350 Or. 336, 352, 258 P.3d 1199, adhered to on recons., 350 Or. 521, 256, 256 P.3d 100 (2011), cert. denied, 565 U.S. 1177 (2012)). A plaintiff must establish each element of fraud by clear and convincing evidence. Riley Hill Gen. Contractor, Inc. v. Tandy Corp., 303 Or. 390, 392, 737 P.2d 595 (1987) (en banc). Defendant argues that plaintiffs failed to successfully plead the second, third, and fourth elements.

#### a. Knowledge of Falsity

Facts establishing the speaker's knowledge of falsity of the representation or the ignorance of its truth are sufficient to meet the second element. Burgdorf v. Weston, 259 Or. App. 755, 771, 316 P.3d 303 (2013).

Judge Acosta found the Clauses neglected to plead facts sufficient to establish Columbia knew of the falsity of its representation that SHB was a reputable builder with strong credit and adequate capitalization at the time it was made. Claus II, 2019 WL 5624754 at *6-8. As Judge Acosta pointed out, a member of an LLC filing for bankruptcy does not mean the LLC is equally affected. Id. at *7 (citing Or. Rev. Stat. § 63.265(1)-(2)(a)). Judge Acosta also found out that SHB's 2012 balance sheet showing an equity deficit was insufficient to support this element because that deficit could simply represent the members' outstanding obligations to contribute cash, property, or services to the LLC. Id. at *8. Judge Acosta thus instructed plaintiffs to include additional facts

showing the bankruptcies of the individual members of SHB affected the credit of SHB itself or that those bankruptcies occurred simultaneously, thereby causing dissolution at the time Columbia made its representations. Id. at *8, 24.

Plaintiffs failed to provide new allegations supporting such an inference. There are no new facts in the SAC regarding this element. Instead, plaintiffs assert "the purpose of pleading the allegations regarding the bankruptcies of the members of the builder, the criminal history of one of the members, and that the identity of the felon member was omitted from the builder's application for a contractor's license" is to "add support to the fact that the builder was financially weak and lacked ethical integrity." Pl.'s Resp. to Mot. Dismiss 18 (doc. 111). These facts may be true, but they are irrelevant to the question of Columbia's knowledge of their truth at the time it made its representations. As such, the facts as plead in the SAC do not cure the defects regarding the knowledge element of plaintiffs' fraud claim.

  b.  **Intent to Induce**

Under Oregon law, the necessary intent in a fraud claim "consists of a defendant misrepresenting a material fact for the purpose of misleading the other party or with the knowledge he is misleading the other party or in reckless disregard of the fact he is misleading the other party." U.S. Nat'l Bank of Or. v. Fought, 291 Or. 201, 225, 630 P.2d 337 (1981) (citation, internal quotations, and emphasis omitted). When a defendant makes a misleading representation, it assumes the obligation to make a "full and fair disclosure of the whole truth." Gregory v. Novak, 121 Or. App. 651, 655, 855 P.2d 1142 (1993). Moreover, active concealment of the falsity of a representation can form the basis of a fraud claim, and when based on active concealment, an independent affirmative duty to disclose a fact need not be alleged. Caldwell v. Pop's Homes, Inc., 54 Or. App. 104, 113, 634 P.2d 471 (1981).

Judge Acosta found the Clauses failed to plead facts sufficient to show Columbia acted with intent to mislead them. Claus II, 2019 WL 5624754 at *9-10. Judge Acosta instructed that plaintiffs could cure the defect in their pleadings by including additional facts showing Columbia's agents engaged in active concealment through refusing to disclose documentation of their evaluation of SHB. Id.

The SAC neglects to provide new facts that support this element. The allegation coming closest to supporting an inference of active concealment is that plaintiffs sought to review invoices, contracts, and other documents sent from SHB to Columbia during the construction process, and Columbia denied this request on confidentiality grounds. SAC ¶ 25 (doc. 103). However, Judge Acosta stated in his previous opinion: "refusal of disclosing a document, by itself, does not rise to the level of active concealment." Claus II, 2019 WL 5624754 at *9. Instead, what is required is an allegation that Columbia's agents had discussions about concealing or were given instructions to conceal the relevant documents from the Clauses. Id. at *10; see also Wieber v. FedEx und Package Sys., Inc., 231 Or. App. 469, 481, 220 P.3d 68 (2009) (fraudulent intent can be inferred from one employee directing another not to disclose certain information). In the SAC, as in the FAC, plaintiffs have failed to allege such facts. Therefore, plaintiffs have failed to cure the defects with regard to this element as well.

    c.    **Justifiable Reliance**

"Whether reliance is justified requires consideration of the totality of the parties' circumstances and conduct, which includes whether the party claiming reliance took reasonable precautions to safeguard his or her own interests." Masood v. Safeco Ins. Co. of Or., 275 Or. App. 315, 332, 365 P.3d 540 (2015) (citation and internal quotations omitted). Finding justifiable

reliance therefore "hinges on the extent to which the plaintiff had a duty to investigate the truth of the statement." Murphy v. Allstate Ins. Co., 251 Or. App. 316, 324, 284 P.3d 524 (2012).

Judge Acosta found the Clauses failed to sufficiently plead this element, and instructed plaintiffs to provide additional facts showing their duty to investigate was affected such that their reliance was reasonable. Claus II, 2019 WL 5624754 at *24. Specifically, Judge Acosta noted plaintiffs' health could have sufficiently affected their duty to investigate, but the facts alleged in the FAC did not support such an inference considering the Clauses successfully contracted with a builder to complete construction on Lots Five and Six without Columbia's aid. Id. at *6.

In the SAC, the Clauses plead the facts of their health conditions with greater specificity. See, e.g., SAC ¶ 8 (doc. 103). Additionally, the SAC more clearly states that the Clauses' health conditions interfered with their ability to investigate Columbia's claims. Id. Nevertheless, the facts noted by Judge Acosta still significantly undercut the Clauses' narrative and render their claim implausible. Namely, the fact that Mr. Claus contracted with a builder to complete construction on Lots Five and Six shows he was fully capable of vetting a contractor himself. Id. at ¶ 13; Claus II, 2019 WL 5624754 at *6. The SAC also acknowledges the Clauses' assets and sophistication as land developers, suggesting that they could have hired a true agent to investigate on their behalf. See SAC ¶¶ 8, 46 (doc. 103) (plaintiffs were only "semi-retired from the construction field" at the time the project began, they were developing at least one other subdivision concurrently with the McFall subdivision, and they owned multiple income producing properties).

Moreover, plaintiffs were sufficiently apprised of SHB's actions to convey objections to Columbia. Id. at ¶ 27. This shows the Clauses did perform their own investigations of some kind and were likely intimately involved in the construction at the McFall subdivision. Accordingly,

the SAC does not cure the defects regarding justifiable reliance and defendant's motion to dismiss plaintiffs' fraud claim is granted.

The Court nonetheless finds that prejudicial dismissal is inappropriate at this juncture. Plaintiffs recently retained counsel and point to additional facts in their possession that may establish the existence of both a fraud and tortious breach of good faith and fair dealing claim. See, e.g., Pl.'s Resp. to Mot. Dismiss 7 ([doc. 111](doc. 111)). The Court cannot conclude that the aforementioned deficiencies are incurable as a matter of law. Nevertheless, because this case has languished in the pleadings stage for three years and plaintiffs have already amended their complaint twice, the Court finds that plaintiffs are limited to one additional opportunity to amend.

## CONCLUSION

For the reasons stated herein, Columbia's Motion to Dismiss ([doc. 106](doc. 106)) is granted as to plaintiffs' fraud claim and denied in all other respects. The parties are ordered to file a stipulated case schedule within thirty days of the date of this order that includes information concerning whether the parties intend to pursue settlement. Additionally, any motion to file a third amended complaint – either to attempt to cure the deficiencies addressed herein or to add a tortious breach of good faith and fair dealing claim – must be filed within thirty days of this Opinion.

IT IS SO ORDERED.

DATED this 11th day of March, 2020.

        /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge